**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**DENNIS J. WELCOME,**

      **Plaintiff,**

    -vs-                                                  **Case No.  2:05-cv-347-FtM-99DNF**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This matter is before the Court on the Plaintiff's complaint (Doc. 1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB")  pursuant to 42 U.S.C. § 405(g).

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memorandums. For the reasons set forth below, the Court recommends that the  Commissioner's decision be **AFFIRMED**.

_____

### I. Social Security Act Eligibility,
### the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On September 19, 2002, the Plaintiff filed an application for Disability and Disability Insurance benefits. (Tr. 47). The claim was denied initially on November 22, 2002, and upon reconsideration on March 31, 2003. (Tr. 31). A hearing was held before Administrative Law Judge (ALJ) Francis Ayer. The Administrative Law Judge denied benefits on February 22, 2005. (Tr. 9-22). The Plaintiff filed a Request for Review of the hearing decision and the Appeals Council denied same on May 31, 2005.

On September 9, 2004, the hearing was held and the Plaintiff testified along with vocational expert, Dr. Everett Tessmer. (Tr. 381). At Step 1, the ALJ found the Plaintiff had met the disability insured status requirements only through December 31, 2001. The Plaintiff alleges being disabled as of April 1, 2000 and unable to work. [Tr. 13]. At Step 2, the ALJ found that the medical evidence supported a finding that the Plaintiff has a history of chronic obstructive pulmonary disease (COPD), hypertension, diabetes mellitus, deviated nasal septum

(status post surgery), headaches, anxiety/panic attacks and degenerative joint disease of the elbows, knees, hips and lumbar spine. [Tr. 16] . At Step 3 the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairments, any of the impairments in Appendix 1, Subpart P, Regulations No. 4.  [Tr. 16]. The ALJ also determined that the Plaintiff's allegations regarding his limitation were not fully credible. [Tr. 21].  At Step 4 the ALJ determined the Plaintiff was unable to perform his past relevant work as a self-employed person in his own auto body restoration business. At Step 5, with the testimony of a vocational expert, the ALJ found the Plaintiff had the residual functional capacity to perform a significant range of medium work but was unable to perform any of his past relevant work. (Tr. 21). The vocational expert testified that a significant number of jobs existed in the Plaintiff's geographical area which the Plaintiff could perform considering his age, education and  residual functional capacity.  Accordingly, the ALJ found the Plaintiff was not disabled.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v.. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. REVIEW OF FACTS AND CONCLUSIONS OF LAW

**A.     Background Facts:**

The Plaintiff was born on March 1, 1947 and was 54 years old when his disability insured status expired on December 31, 2001. (Tr. 47). The Plaintiff has a GED and was self-employed in an auto body restoration business between 1989 and 2000. (Tr. 60,65, 94). The Plaintiff alleges an onset date of April 1, 2000, due to degenerative joint disease, tendinitis, right wrist pain, chronic obstructive pulmonary disease (COPD), diabetes melllitus, high blood pressure, chest pain, gastro esophageal reflux disease (GERD), fainting (syncope), asthma, headaches and anxiety disorder. (Tr. 59, 65).

The Plaintiff was seen by Rajan Sareen, M.D., between April 21, 1998 and March 6, 2001. (Tr. 96-108). The Plaintiff was seen on February 3, 1999, for weakness and burning sensation in the back of his legs, episodes of rapid pulse, tiring easily, pain, stiffness in his neck and occasional vertigo upon rising. The Plaintiff was diagnosed as "hypertensive, with COPD, and diabetes mellitus, controlled". The Plaintiff was seen on April 26, 1999, and the Progress

4

Notes read that Plaintiff's panic attacks had improved (anxiety), but Plaintiff complained of soreness in his neck. (Tr. 100-101). By June 28, 1999, it is noted that the Plaintiff's panic attacks had improved and the Plaintiff seemed to be doing well on Xanax. The notes also reflect the Plaintiff was becoming more depressed and fatigued. [Tr. 99]. On December 7, 1999, the Plaintiff's assessment continued to include depression and anxiety. [Tr. 98]. On February 5, 2001, the assessment included stomach pain, with acid reflux, gastritis, depression, anxiety - improved, hypertension, COPD, diabetes, fatigue and vertigo. [Tr. 97]. On March 6, 2001, the Plaintiff complained of headaches, mostly behind his eyes and radiating to his neck region. The Plaintiff also complained of a migraine headache. [Tr. 96]. The Plaintiff's social history reveals he has a history of smoking and drinking. The Plaintiff was prescribed a new prescription and a CT scan was recommended if his headaches continued.

On July 30, 2001, the Plaintiff was admitted to Cape Coral Hospital with chest pain. (Tr. 128). On July 31, 2001, a Cardiolite stress test was performed. IMPRESSION: "1. Electrically negative submaximal stress test without ischemic changes or angina. 2. Cardiolite scintigraphy is pending for confirmation. [Tr. 130]. An echocardigram was performed and the report indicated that the left ventricle was normal in size; the other chambers were normal in size and there was no thrombi, masses or effusion. Also the tricuspid valve appeared normal. (Tr. 131). A chest x-ray revealed a negative portable chest view. The history and physical examination assessed/plan revealed: "1. Chest pain. This could be atypical, however, unstable angina should be ruled out. I will follow his stress test results. The patient has been advised to quit smoking. 2. Chronic Obstructive Pulmonary Disease. No exacerbation at the present time. 3. Non insulin-dependent diabetes mellitus. His current sugar level is normal. 4. Hypertension,

controlled on Tenormin. Tenomin is to be continued". (Tr. 134). The Plaintiff was discharged from the hospital.

On August 1, 2001, the Plaintiff returned to the VA Out patient Clinic for follow-up of his chest pains. He advised the chest pains were continuing and he had an occasional cough. The Plaintiff also reported his headaches had stopped. The Plaintiff's stress testing was normal and he was diagnosed with bronchitis due to smoking, episodic headaches, tobacco use and hypertension.

In September of 2001 (exact date unknown), the Plaintiff stated he had bloating and pain of the abdomen for several weeks. X-rays of the abdomen were normal, except for changes at L3-L4 which is compatible with intervertebral disk disease. The Plaintiff was seen on September 20, 2001 for a neurological consultation regarding his headaches. The Plaintiff said they were severe but were relieved by the use of Darvocet. The Plaintiff's physical examination appeared normal and the Plaintiff was diagnosed with probable vascular headaches. (Exh. 8F).

In October 2001 - following his sister's death, the Plaintiff reported chest pains and panic attacks. On examination, the Plaintiff's blood pressure was 144/100, his EKG was normal. The Plaintiff was diagnosed with anxiety, anxiety disorder and hypertension, uncontrolled. (Exh. 15F).

In November 2001, the Plaintiff reported he was disorientated and was light headed 90 percent of the time. Although he reported no headaches, he said he felt a pulsating sensation to the head, which had been ringing bilaterally since July of 2001. The Plaintiff was advised to discontinue using Buspirone [which resulted in all his side effects resolving except for being light headed]. The Plaintiff on this occasion was diagnosed with tinnitus/rhinitis, eustachean tube

dysfunction, headaches, questionable vascular etiology, anxiety, and hypertension, controlled. (Exh. 16F).

The Plaintiff continued to seek care for his panic attacks. On March 18, 2002, an MRI of the brain revealed no evidence of cerebral edema. It is evident from the medical evidence that the Plaintiff has a history of chronic obstructive pulmonary disease, hypertension, diabetes mellitus, deviated nasal septum - status post surgery in January 2004, and headaches. However, the medical evidence does not contain the requisite clinical and laboratory findings to show that the Plaintiff has any impairment or combination of impairments that meet the criteria for any listed impairment. Further, the record showed that no treating or examining physician reported findings equivalent in severity to the criteria for any listed impairment.

### B.     Specific Issues

#### 1.     The ALJ Erred by Not Finding Plaintiff's Panic Attacks to Be a Severe Impairment.

The Plaintiff contends that the ALJ failed to find the Plaintiff's panic attacks were a severe impairment within the meaning of the Social Security Regulations. [Tr. 16]. The ALJ reviewed the Plaintiff's episodes of vertigo brought on by the panic attacks that were occurring prior to the alleged onset date. (Tr. 14, 99-101). In March of 2001, the Plaintiff reported to his treating physician, Dr. Lisa Uy, that he thought his panic attacks were returning, his last panic attack having been a year prior. (Tr. 110). A CAT scan was ordered and performed on May 16, 2001. Impression: "No Acute Intracranial Event. There is no definite mass lesion seen intracranially. There is no edematous changes or mass effect or shift of midline structures". (Tr. 120).

7

In July 2001, Dr. Enrique Vera, a psychiatrist, evaluated the Plaintiff after he was referred for "management of episodic headaches, severe during exacerbation. ...... has anxiety disorder. Relieved with Darvocet but takes a few days. Already seen by optometry for new glasses but has not helped". Dr. Vera's notes states "54 y/o man with COPD, smoking, on Xanax allegedly for panic attacks. Dr. Vera found the patient to be polite, cooperative, casually dressed, and well groomed in no acute distress". Further, Dr. Vera found "No psychiatric indication for Xanax". (Tr. 121-122).

The ALJ determined in his finding that the Plaintiff had reported in October of 2001 that panic attacks had been a problem for him (for about two weeks time). However, there are no other significant complaints of a panic disorder in the record prior to December 31, 2001. (Tr. 14, 152-56].

> A medically determinable impairment can only be established by "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Plaintiff failed to establish the severity of his attacks and proffered no medical evidence that the panic attacks rose to the level of being so severe they would limit his ability to perform any work activity within the parameters of his residual functional capacity. The ALJ found the Plaintiff has the RFC to perform a significant range of medium work. 20 C.F.R. § 404.1567. Therefore, the ALJ's determination that Plaintiff is able to perform medium is supported by substantial evidence. (Tr. 21). .

### 2. The ALJ Erred By Concluding the Plaintiff is Able to Perform Medium Work Activity.

The Plaintiff contends that the weight of the evidence does not support a finding of an ability to perform medium work activity and did not place proper weight on the treating physician's opinions.

The Plaintiff's treating physician, Lisa Linda Uy, M.D., completed a Physical Capacity Evaluation Form on September 2, 2004, which found the Plaintiff limited to sedentary work activity. Dr. Uy concluded that the Plaintiff is "limited with prolonged standing due to dizziness/vertigo. (Tr. 379, 380). However, Dr. Uy's evaluation failed to provide any medical evidence or data to support this opinion. The Plaintiff argues that Dr. Uy treated Plaintiff before December 31, 2001. (Tr. 109-12). Dr. Uy's treatment notes from that time period offered no clinical findings or laboratory diagnostic techniques which supported or corroborated her limitations of Plaintiff to sedentary work activity. In fact, the treatment notes do not show any restrictive limitations on Plaintiff during that period. (Tr. 109-153). The ALJ properly discounted Dr. Uy's September 2004 opinion.

The treatment notes of Dr. Uy were also reviewed by two state agency physicians, who each provided an opinion as to the Plaintiff's functional capacity through December 31, 2001. (Tr. 239-40, 285-92). Both physicians indicated that the Plaintiff could perform at least medium work activity *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (an ALJ may consider opinions from non-examining physicians so long as the Commissioner provided good cause for not according a treating physician's opinion the substantial weight normally required).

The ALJ found that the Plaintiff was capable of occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 pounds. (Tr. 18). He found the Plaintiff capable of standing and/or walking about 6 hours in an 8-hour workday, sitting for a total of 6 hours in an 8-hour workday, and frequently climbing ramps, stairs, balancing, stooping, kneeling, crouching and crawling. The ALJ did find the Plaintiff should never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation etc., and avoid unprotected heights, moving machinery, etc. (Tr. 18). In this case, the Plaintiff did not proffer any credible medical evidence which demonstrated his physical impairments caused functional limitations more restrictive than those found by the ALJ.

### 3. The ALJ's Finding That Plaintiff can Perform Jobs Identified By the Vocational Expert Conflicts with the ALJ's Own RFC Findings and The Dictionary of Occupational Titles ("DOT")

At the hearing, the ALJ called upon Dr. Everett Tessmer, a vocational expert to identify jobs that the Plaintiff could perform in the national economy. (Tr. 397-98). The vocational expert identified eight (8) jobs that the Plaintiff could perform. The Plaintiff argues that the Plaintiff cannot perform the following six (6) positions which were noted by the vocational expert:

Maintenance Mechanic - As this job has the same RFC as Plaintiff's past relevant work.

Front End Mechanic - As this job requires exposure to atmospheric conditions and frequent proximity to moving mechanical parts. (The Plaintiff must avoid exposure to fumes, odors, etc.)
.
Campground Attendant - The Plaintiff should never climb ladders, ropes, etc.. This job requires occasional climbing. Precluded by the parameters of the ALJ's RFC.

Auto Rental Clerk - This job is not listed in the DOT. The Plaintiff argues that absent DOT vocational information, a proper evaluation of the VE's testimony is not possible.

10

Auto Service Attendant - Again, this job requires frequent exposure to atmospheric conditions.

Auto Parts Clerk - The VE testified an auto parts clerk is light and semi-skilled, with an SVP of 3 (Tr. 398). The job of auto parts clerk is actually skilled, with an SVP of 5.

The vocational expert also identified the job of route driver and fuel attendant. Plaintiff's counsel did not dispute his ability to perform either of these positions which are abundant in the national economy.

The determination of how many jobs may exist in the local, state, or national economies, requires the expertise of a VE who is familiar with reliable forms of vocational data, including the DOT. 20 C.F.R. § 404.1566(d)(1)-(5) (examples of various governmental and other publications of job information). In this case, the Plaintiff did not dispute the qualifications of the VE and because there is no evidence that the ALJ improperly accepted the VE's testimony, it is recommended that this Court not make a de novo determination of the VE's credibility. *Sias v. Secretary of Health and Human Service*, 861 F.2d 475, 480-81 (6th Cir. 1988).

The Plaintiff also asserts that SSR 00-4p requires vocational information to be consistent with the DOT . [Pl's Br. at 13]. SSR 00-4p states that occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT and requires an ALJ to inquire about potential conflicts between the VE testimony and the information contained in the DOT. SSR 00-4p, 65 Fed. Reg. 75759, 75760-61 (2000). In the instant case, the ALJ did not ask the VE whether there were conflicts between his testimony and the information provided in the DOT because the ALJ did not find any such material conflicts. (Tr. 398-400).

The VE identified a significant number of jobs in the national economy that Plaintiff could perform. The ALJ applied the correct legal standards in evaluating the Plaintiff's case and

substantial evidence supports the ALJ's finding that the Plaintiff could return to other work that exists in the national economy in significant numbers.

### III. RECOMMENDATION

For the reasons stated above, it is recommended that the decision of the Commissioner be **affirmed**. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** in Chambers, Fort Myers, Florida, this 4th day of August , 2006.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Deliver Copies of this Order to:
All Counsel of Record/*Pro Se* Litigants